FIRE PROTECTION DISTRICTS — WHO MAY VOTE IN ELECTION — CONTRACT WITH CITY — DELEGATION OF MINISTERIAL DUTIES The persons qualified to vote in an election for the proposition of the organization of a fire protection district pursuant to 19 O.S. Chapter 21, 901.1 [19-901.1] — 19 O.S. 901.26 [19-901.26] (1971), are those who are residents of such proposed district and who are qualified electors in their respective precincts. Pursuant to 74 O.S. 1008 [74-1008] (1971) of the Interlocal Cooperation Act, a fire protection district may legally contract with a city for the latter to furnish fire protection service to the district, and the district may use its annual operational assessments for payment of such contracted fire protection services. The Board of Directors of a fire protection district may delegate only those official duties that are ministerial in nature; i.e., those duties which do not involve the use of the discretion and judgment of the board, but are absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts. The Attorney General has considered your request for an opinion wherein you ask the following questions regarding implementation of conjoint fire protection service by the City of Sapulpa and a planned fire protection district organized pursuant to the Fire Protection Districts Act, 19 O.S. Chapter 21, 901.1 [19-901.1] — 19 O.S. 901.26 [19-901.26] (1971): "1. In providing for an election, the Code provides that the holders of title to lands shall be entitled to the vote but in light of recent Federal Court decisions, would the electors properly be the qualified voters from within the proposed District? "2. Could the District legally contact sic to pay the City for fire protection within the District? "3. Could the District use its operational tax levy, in whole or in part, to pay the City for the additional City fire protection personnel and equipment? "4. How many, if any, of the statutory duties and obligations of the Board of Directors of the District could be relegated, by contract, to the Board of City Commissioners of the City of Sapulpa? Or is there a workable and legal alternative?" The qualifications of voters in the election for the organization of a fire protection district, pursuant to 19 O.S. 1971 Chapter 21, are set out in 19 O.S. 901.3 [19-901.3], the material part of which states: ". . . All persons resident of such proposed district, who are qualified electors in their respective precincts, shall be qualified to vote on such proposition." It does not appear that such qualifications contravene federal case law. Accordingly, the persons qualified to vote in an election for the organization of a fire protection district are those who are resident of the proposed district and are qualified electors in their respective precincts. In regards to your second question, your attention is directed to the Interlocal Cooperation Act, 74 O.S. Chapter 31, 1001 [74-1001] — 74 O.S. 1008 [74-1008] (1971), which states at 74 O.S. 1008 [74-1008], in part, as follows: "Any one or more public agencies may contract with any one or more other public agencies to perform any governmental service, activity, or undertaking which any of the public agencies entering into the contract is authorized by law to perform, provided that such contract shall be authorized by the governing body of each party to the contract . . . ." Attorney General's Opinion No. 73-101, 6 Okl. A.G. 1, considered whether existing fire protection districts could enter into agreements pursuant to the Interlocal Cooperation Act. The opinion determined that a fire protection district, organized pursuant to 19 O.S. 901.1 [19-901.1] -19 O.S. 901.26 [19-901.26] (1971), came within the definition of "public agency", as defined in 74 O.S. 1003 [74-1003] of the Interlocal Cooperation Act, and, therefore, was authorized to enter into agreements pursuant to said Act. A city is a "public agency" as that term is defined in Section 1003 of the Interlocal Cooperation Act see, "Our Unrealized Resource-Inter-Municipal Cooperation" by Maurice H. Merrill, 23 Okl.L.Rev. 349, 354-356 (1970), and is authorized to establish and operate a fire department. 11 O.S. 340 [11-340] (1971). Accordingly, a city and an existing fire protection district may legally enter into a contract for the city to perform fire protection service for the district, provided such contract is authorized by the governing body of each party to the contract. The power for such authorization of the governing body of a fire protection district is found at 19 O.S. 901.7 [19-901.7] (1971), which sets out the powers of the Board of Directors of a fire protection district, one of which is to "execute all necessary contracts". The Fire Protection Districts Act authorizes a district to issue general obligation bonds in such quantities as is necessary to raise the money for the construction of the proposed work, the acquisition of property and rights and otherwise to fully carry out the objects and purposes of this Act. Title 19 O.S. 901.17 [19-901.17] (1971). 19 O.S. 901.19 [19-901.19] of said Act provides that: "Each year the Board shall levy an assessment sufficient to raise the annual interest on the outstanding bonds, and, in addition thereto, an amount equal to the amount of the bonds to be retired in said year. The Board shall also levy an annual assessment sufficient to care for the cost of operation of the District and the maintenance of the Fire Department and its equipment, and for payment of salaries of the officers and employees of the District, provided, that no such annual assessment for operation, maintenance, and salaries shall exceed seven (7) mills on the dollar of assessed value of the property in the district . . . ." The annual assessment for operation of the fire protection district may be used for operational costs, maintenance of the Fire Department and its equipment, and salaries of the officers and employees. Such assessment is for the cost of maintaining a fire protection service by the district. Accordingly, if, pursuant to 74 O.S. 1008 [74-1008] (1971), the fire protection district contracts with a city for the latter to provide such service, the district may legally use its annual operational assessment to pay the agreed amount of the contract. It should be noted, however, that said annual operational assessments may not exceed seven (7) mills on the dollar of assessed value of the property in the district. If its annual operational assessments are paid by a fire protection district to a city, pursuant to a contract that the latter furnish fire protection services to the district, how the city uses such monies would not be governed by the Fire Protection Act. Therefore, your second and third questions are answered in the affirmative. Pursuant to the Interlocal Cooperation Act, 74 O.S. Chapter 31, 1001 [74-1001] — 74 O.S. 1008 [74-1008] (1971), a fire protection district organized pursuant to 19 O.S. Chapter 21, 901.1 [19-901.1] — 19 O.S. 901.26 [19-901.26] (1971), may legally contract with a city to perform and furnish fire protection service to the district, and the district may use its annual operational assessment for payment to the city for such services. In regards to your fourth question, 67 C.J.S. "Officers", 114, page 404 (1950), states: "Delegation of duties. As a general rule official duties involving the exercise of discretion and judgment for the public weal cannot be delegated . . . under the rule delegatus non protest delegate, a person to whom a duty is delegated cannot lawfully devolve a duty on another unless expressly authorized to do so." It is stated at 67 C.J.S., "Officers", 104, page 373 (1950), as follows: "In the absence of statutory authority a public officer cannot delegate his powers, even with the approval of a court. An officer, to whom a power of discretion is entrusted, cannot delegate the exercise thereof except as proscribed by statute. He may, however, delegate the performance of a ministerial act, as where, after the exercise of discretion, he delegates to another the performance of a ministerial act to evidence the result of his own act of discretion." Accordingly, public officers may not delegate official duties and powers which involve the exercise of discretion or judgment for the public well being. However, performance of ministerial duties may be delegated. Ministerial duties are described at 63 Am.Jur. 2d, "Public Officers and Employees", 273, pages 789-790 (1972), which states, in part, as follows: "From their nature, the powers and duties of public officers are, in general, classified as ministerial and discretionary. . . ." "The character of a duty as ministerial or discretionary must be determined by the nature of the acts to be performed and not by the office of the performer . . . Official duty is ministerial when it is absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts. ". . . Accordingly, the Board of Directors of a fire protection district, being a public office, may not delegate, by contract or otherwise, its official powers and duties which involve the exercise of discretion and judgment. Only the performance of ministerial duties may be delegated by said Board. The powers and duties of the Board of Directors of a fire protection district are set out at 19 O.S. 901.7 [19-901.7] (1971). Only those duties and obligations therein, which do not require discretion or judgment, but are absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts, may be delegated by contract to the Board of City Commissioners of the contracting city. As a matter of law, there does not appear to be an alternative to the Board of Directors performing said statutory duties itself. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: 1. The persons qualified to vote in an election for the proposition of the organization of a fire protection district pursuant to 19 O.S. Chapter 21, 901.1 [19-901.1] — 19 O.S. 901.26 [19-901.26] (1971), are those who are residents of such proposed district and who are qualified electors in their respective precincts. 2. 3. Pursuant to 74 O.S. 1008 [74-1008] of the Interlocal Cooperation Act, 74 O.S. (1971), a fire protection district may legally contract with a city for the latter to furnish fire protection service to the district, and the district may use its annual operational assessments for payment of such contracted fire protection services. 4. The Board of Directors of a fire protection district may delegate only those official duties that are ministerial in nature; i.e., those duties which do not involve the use of the discretion and judgment of the board, but are absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts. (HAROLD B. McMILLAN, JR.) (ksg) ** SEE: OPINION NO. 92-572 (1992) (UNPUBLISHED) **